## <u>NOTICE OF OBJECTION</u>

**NOTICE OF OBJECTION TO DEBTORS SELLING THEIR INTEREST IN UNIT 18F OF PREMISES KNOWN AS 2077 TENANTS CORP., 2077 CENTER AVENUE, FORT LEE, NEW JERSEY, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, PURSUANT TO 11 U.S.C. §363(b), (f), AND (m).**

2077 TENANTS CORP. has filed papers with the court to object to the Debtors sale of the Unit 18f of premises known as 2077 Tenants Corp., located at 2077 Center Avenue, Fort Lee, New Jersey.

**<u>Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.</u> (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to object to the sale, or if you want the court to consider your views on the objection, then you or your attorney must: File with the court a written response explaining your position at:

**Clerk**
**U.S. Bankruptcy Court**
**50 Walnut Street**
**3rd Floor**
**Newark, New Jersey 07102**

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

You must also mail a copy to:

**Kates, Nussman, Rapone, Ellis & Farhi, LLP**
**190 Moore Street, Suite 306**
**Hackensack, NJ 07601.**

**Phelan Hallinan & Diamond, PC**
**400 Fellowship Road, Suite 100**
**Mt. Laurel, NJ 08054**

**Marie Ann Greenberg, Trustee**
**30 Two Bridges Road, Suite 330**
**Fairfield, New Jersey 07004**

Attend the hearing scheduled to be held on November 6, 2014 at 11 a.m./p.m. before the Honorable Donald H. Steckroth, United States Bankruptcy Judge, at the United States Bankruptcy Court, M.L. King Federal Building, 50 Walnut Street, Newark, New Jersey 07102.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.


Date: October 3, 2014                         /s/ Matthew Z. Earle
                                              Matthew Z. Earle, Esq.
                                              Kates, Nussman, Rapone
                                              Ellis & Farhi, LLP
                                              190 Moore Street, Suite 306
                                              Hackensack, NJ 07601.

Kates, Nussman, Rapone, Ellis
& Farhi, LLP
190 Moore Street, Suite 306
Hackensack, NJ 07601
Attorneys for Unsecured Creditor
2077 Tenants Corp.
Matthew Z. Earle

_____ X    United States Bankruptcy Court
In Re:                                        District of New Jersey

       Barry and Marilyn  Levine,

                      Debtors.        Case No.: 13-36917-DHS

                                        Chapter:     13

                                        Hearing Date: November 6, 2014

                                        Judge: Donald H. Steckroth

_____ X

To:     OFFICE OF THE US TRUSTEE
        One Newark Center
        Newark, New Jersey 07102

       The undersigned, Kates Nussman Rapone Ellis & Farhi, LLP, attorneys for Unsecured

Creditor, 2077 TENANTS CORP. hereby objects to the Debtors' Motion to Sell their interest in

Unit 18F of premises known as 2077 Tenants Corp., 2077 Center Ave., Fort Lee, New Jersey

Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. §363(b), (f), AND (m) on

the following grounds:

       The proposed Chapter 13 Plan because the Plan lists the Corporation as a 100 percent

payee.  According to the Debtor's motion the creditors will receive payment in full of their

claims. 2077 Tenants Corporation does not object to the sale provided that all amounts due and

owing to the Corporation are paid in full at closing.

Notwithstanding the foregoing, the Corporation believes that it is crucial to place all parties on notice that, in accordance with the Proprietary Lease and Recognition Agreement governing the relationships between the Debtor, the Corporation and the secured lender, Chase, the Corporation is entitled to first and full payment out of the proceeds of the sale (in cooperative terms, an "assignment" of shares and lease). In particular, as seen in paragraph 17 of the attached Proprietary Lease, while a Shareholder is permitted to pledge his shares to a secured lender, any sale of the Corporation's shares (even in the event of a sale by the secured lender) must comply with, among other things, paragraph 16 of the Proprietary Lease. Paragraph 16 (a) (iv) requires that in the event of any assignment of shares, the Corporation must first be paid all sums due and owing, including any legal fees and other transfer fees incurred by the Corporation in connection with the cooperative closing. See Exhibit A Proprietary Lease.[1]

In addition, while we have been unable to locate the original recognition agreement with the lender, we believe that said agreement is the standard "Aztec" form recognition agreement, a copy of which is attached hereto. As seen therein under paragraph 2 (e), the recognition agreement expressly provides that the Corporation is satisfied first out of the proceeds of any sale. See Exhibit B, sample recognition agreement.

Finally, we note that any potential purchaser must comply with the Corporation's application process and meet its financial standards for admission, and that any closings need to be coordinated with our office for the preparation of the shares and lease.

I also request that if either the Debtor or secured lender has copies of the original Proprietary Lease, Shares, and/or Recognition Agreement, that same be forwarded to us. If not affidavits of lost documents will need to be created at the Debtors expense.

---

[1] Note that the original Proprietary Lease could not be located. However, all leases are in the same form.

WHEREFORE, 2077 Tenants Corporation respectfully requests that any Order approving

the sale include that Corporation is entitled to first and full payment out of the proceeds of the

sale

Kates, Nussman, Rapone, Ellis
& Farhi, LLP

Dated: October 3, 2014                    /s/ Matthew Z. Earle
                                          Matthew Z. Earle

Apt. No.:

Shares:

2077   TENANTS CORP.

Lessor,

TO

Lessee

PROPRIETARY LEASE

## INDEX

| | Page |
|---|---|
| Alterations | 12 |
|    Removal | 12 |
|    Surrender on Expiration of Term | 13 |
| Assignment | 6 |
|    Consents: On Death of Lessee | 7 |
|    Consents Generally; Stockholders' and Board's Obligations to Consent | 7 |
|    Release of Lessee Upon Assignment | 7 |
|    Further Assignment or Subletting | 7 |
|    Statement by Lessor | 7 |
| Assignment of Lessor's Rights Against Occupant | 5 |
| Cancellation of Prior Agreements | 5 |
| Changes in Terms of Proprietary Leases | 4 |
| Changes to Be in Writing | 24 |
| Charges for Gas and Electricity | 24 |
| Continuance of Cooperative Management of Building After All Leases Terminated | 21 |
| Cooperation | 14 |
| Damage to Apartment or Building | 3 |
|    Rent Abatement | 3 |
| Demised Premises; Term | 1 |
| Effect of Partial Invalidity | 23 |
| Expiration of Lease Due to Damage | 3 |
|    Waiver of Subrogation | 3 |
| Extension of Option to Cancel | 20 |
|    Right of Lessee to Cancel | 20 |
| Foreclosure – Receiver of Rents | 22 |
| House Rules | 5 |
| Increase in Rate of Fire Insurance | 12 |
| Indemnity | 5 |
| Inspection of Books of Account; Annual Report | 4 |
| Lease Subordinate to Mortgages and Ground Leases | 13 |
| Lessee More Than One Person | 23 |
| Lessee's Option to Cancel | 19 |
|    Deposits Required | 19 |
|    Removal of Fixtures; Possession | 19 |
|    Permission to Show and Occupy Premises | 20 |
|    Effective Date of Cancellation | 20 |
|    Rights on Lessee's Default | 20 |
| Lessor's Additional Remedies | 23 |
| Lessor's Immunities | 15 |
|    Storage Space and Laundry | 15 |
|    Automobiles and Other Property | 15 |
| Lessor's Repairs | 2 |
| Lessor's Right to Remedy Lessee's Default | 11 |

|  | Page |
|---|---|
| Lessor's Rights After Lessee's Default | 17 |
| Collection of Rent from Subtenants | 18 |
| Sale of Shares | 18 |
| Marginal Headings | 24 |
| Mechanic's Lien | 14 |
| No Discrimination | 24 |
| Non-Interference with Marketing Unsold Shares | 24 |
| Notice to Lessor of Default | 23 |
| Notices | 15 |
| Payment of Rent | 5 |
| Penthouses, Terraces and Balconies | 4 |
| Pledge of Shares and Lease | 8 |
| Secured Party | 8 |
| Quiet Enjoyment | 5 |
| Reimbursement of Lessor's Expenses | 15 |
| Rent (Maintenance) How Fixed | 1 |
| Accompanying Shares to Be Specified in Proprietary Leases | 1 |
| Cash Requirements Defined | 1 |
| Authority Limited to Board of Directors | 2 |
| Issuance of Additional Shares | 2 |
| Paid-in Surplus | 2 |
| Failure to Fix Cash Requirements | 2 |
| Repairs by the Lessee | 10 |
| Odors and Noises | 11 |
| Equipment and Appliances | 11 |
| Rules and Regulations and Requirements of Mortgage | 11 |
| Right of Entry, Key | 14 |
| Secured Party, Rights of | 8 |
| Recognition Agreement | 10 |
| Services by Lessor | 2 |
| Subletting | 6 |
| Surrender of Possession | 19 |
| Termination of Lease by Lessor | 16 |
| Lessee Becoming a Bankrupt | 16 |
| Assignment, Subletting or Unauthorized Occupancy | 17 |
| Default in ent | 17 |
| Default in Other Covenants | 17 |
| Lessee's Objectionable Conduct | 17 |
| Termination of All Proprietary Leases | 17 |
| Destruction of Building | 17 |
| Condemnation | 17 |
| To Whom Covenants Apply | 22 |
| Unity of Shares and Lease | 23 |
| Unsold Shares | 21 |
| Subletting Apartment and Sale of Shares | 21 |
| Change in Form of Lease | 21 |

ii

PROPRIETARY LEASE, made as of                                    , 19      between
2077 TENANTS CORP., Borough of Fort Lee, New Jersey, hereinafter
called the Lessor, and hereinafter called the Lessee.

WHEREAS, the Lessor is the owner of the land and the building and other
improvements erected thereon in the Borough of Fort Lee,
State of New Jersey known as                            (hereinafter called the "Building");
and

WHEREAS, the Lessee is the owner of                 shares of the Lessor, to which
this lease is appurtenant, and which have been allocated to Apartment      in the
Building;

NOW, THEREFORE, in consideration of the premises, the Lessor hereby    **Demised**
leases to the Lessee, and the Lessee hires from the Lessor, subject to the terms and    **Premises**
conditions hereof, Apartment      in the Building, (hereinafter referred to as "the
apartment") for a term from        , 19  , until June 30, 2030(unless sooner    **Term**
terminated as hereinafter provided). As used herein "the apartment" means the
rooms in the Building as partitioned on the date of the execution of this lease
designated by the above-stated apartment number, together with their
appurtenances and fixtures and any terraces, balconies, roof, or portion thereof,
outside of said partitioned rooms that are allocated exclusively to the occupant of
the apartment.

1. (a) The rent (sometimes called "maintenance") payable by the Lessee for    **Rent**
each year, or portion of a year, during the term shall equal that proportion of the    **(Maintenance)**
Lessor's cash requirements for such year, or portion of a year, which the number of    **How Fixed**
shares of the Lessor allocated to the apartment bears to the total number of shares of
the Lessor issued and outstanding on the date of the determination of such cash
requirements. Such maintenance shall be payable in equal monthly installments in
advance on the first day of each month, unless the Board of Directors of the Lessor
(hereinafter called the "Board") at the time of its determination of the cash
requirements directs otherwise. The Lessee shall also pay such additional rent as
may be provided for herein when due.

(b) In every proprietary lease heretofore executed by the Lessor there has    **Accompanying**
been specified, and in every proprietary lease hereafter executed by it there will be    **Shares to Be**
specified, the number of shares of the Lessor issued to a lessee simultaneously    **Specified in**
therewith.    **Proprietary**
    **Leases**

(c) "Cash requirements" whenever used herein means the estimated amount    **Cash**
in cash which the Board shall from time to time in its judgment determine to be    **Requirements**
necessary or proper for (1) the operation, maintenance, care, alteration and    **Defined**
improvement of the corporate property during the year or portion of the year for
which such determination is made; (2) the creation of such reserve for replacement
of common facilities and contingencies as it may deem proper; (3) the payment of, or
the establishment of a reserve for, any rentals and other sums payable under any
ground leases covering the property of the Lessor; and (4) the payment of any
obligations, liabilities or expenses incurred (even though incurred during a prior

period) or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from proprietary lessees) and (ii) cash on hand which the Board in its discretion may choose to apply. The Board may from time to time modify its prior determination and increase or diminish the amount previously determined as cash requirements of the Lessor for a year or portion thereof. No determination of cash requirements shall have any retroactive effect on the amount of rent payable by any lessee for any period prior to the date of such determination. All determinations of cash requirements shall be conclusive as to all lessees.

**Authority Limited to Board of Directors**

(d)  Whenever a power or privilege is given to the Board in this paragraph or any other paragraph of this lease, the same may be exercised only by the Board, and in no event may any such power or privilege be exercised by a creditor, receiver or trustee.

**Issuance of Additional Shares**

(e)  If the Lessor hereafter issues shares (whether now or hereafter authorized) in addition to those issued on the date of the execution of this lease, the holders of the shares hereafter issued shall be obligated to pay rent at the same rate per share as the other proprietary lessees from and after the date of issuance. If any such shares are issued on a date other than the first or last day of the month, the rent for the month in which issued shall be apportioned. The cash requirements as last determined shall, upon the issuance of such shares, be deemed increased by an amount equal to such rent.

**Paid-in Surplus**

(f)  The Board may, from time to time as may be proper, determine how much of the maintenance and other receipts shall be credited on the corporate accounts to "Paid-in Surplus" when received (but not more than such amount as represents payments on account of principal of mortgages on the property of the Lessor and other capital expenditures). Unless the Board determines otherwise, the amount of payments on account of principal of any mortgages shall be credited to Paid-in Surplus and shall not be deemed income to the Lessor.

**Failure to Fix Cash Requirements**

(g)  The failure of the Board to determine the Lessor's cash requirements for any year or portion thereof shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof, or a release of the Lessee from the obligation to pay the maintenance or any installment thereof, but the maintenance computed on the basis of the cash requirements as last determined for any year or portion thereof shall thereafter continue to be the maintenance until a new determination of cash requirements is made.

**Lessor's Repairs**

2.  The Lessor shall at its expense keep all of the Building in good repair, including the sidewalks and courts surrounding the same, and its equipment and apparatus except those portions the maintenance and repair of which are expressly stated to be the responsibility of the Lessee pursuant to Paragraph 18 hereof.

**Services by Lessor**

3.  The Lessor shall maintain and manage the Building as a first-class apartment building, shall keep the elevators and the public halls, cellars and stairways clean and properly lighted and heated, shall provide the number of attendants requisite, in the judgment of the Board, for the proper care and service of

2

the Building, or as required by law, and shall provide the apartment with a proper and sufficient supply of hot and cold water and of heat, and if there be central air conditioning equipment supplied by the Lessor, air conditioning when deemed appropriate by the Board. The covenants by the Lessor herein contained are subject, however, to the discretionary power of the Board to determine, from time to time, what services and what attendants shall be proper, subject to law, and the manner of maintaining and operating the Building, and also what existing services shall be increased, reduced, changed, modified or terminated.

4. (a) If the apartment or the means of access thereto or the Building are damaged by fire or other cause covered by multiperil policies commonly carried by cooperative corporations in the State of New Jersey (any other damage to be repaired by the Lessor or the Lessee pursuant to Paragraphs 2 and 18, as the case may be), the Lessor shall at its own cost and expense, with reasonable dispatch after receipt of notice of said damage, repair or replace or cause to be repaired or replaced, with materials of a kind and quality then customary in buildings of a similar type, the Building, the apartment, and the means of access thereto, including the walls, floors, ceilings, pipes, wiring and conduits in the apartment. Anything in this Paragraph or Paragraph 2 notwithstanding, the Lessor shall not be required to repair or replace, or cause to be repaired or replaced, equipment, fixtures, furniture, furnishings or decorations installed by the Lessee or any of his predecessors in title, nor shall the Lessor be obligated to repaint or replace wallpaper or other decorations in apartment.

*Damage to Apartment or Building*

(b) In case the damage resulting from fire or other cause is so extensive as to render the apartment partly or wholly untenantable, or if the means of access thereto are destroyed, the rent hereunder shall proportionably abate until the apartment is again rendered wholly tenantable or the means of access restored; but if said damage was caused by the act or negligence of the Lessee or any occupant of the apartment, such rental shall abate only to the extent of the rental value insurance, if any, collected by the Lessor with respect to the apartment.

*Rent Abatement*

(c) If the Board determines that (i) the Building has been totally destroyed by fire or other cause, or (ii) the Building has been so damaged that it cannot be repaired within a reasonable time after the loss is adjusted with the insurance carriers, or (iii) the destruction or damage was caused by hazards which are not covered under the Lessor's insurance policies then in effect, and if in any such case the record holders of at least two-thirds of the issued and outstanding shares, at a shareholders' meeting duly called for that purpose held within 120 days after the determination by the Board, vote not to repair, restore or rebuild, then upon the giving of notice pursuant to Paragraph 31 hereof, this Lease and all other proprietary leases and all right, title and interest of the parties thereunder and the tenancies thereby created shall thereupon wholly cease and expire, and rent shall be paid to the date of such destruction or damage.

*Expiration of Lease Due to Damage*

(d) The Lessor and the Lessee hereby release each other from any and all liability or responsibility to the other or anyone claiming through or under the Lessor or the Lessee by way of subrogation or otherwise for any loss or damage to property caused by fire or any of the extended coverage casualties, even if such fire or other casualty is caused by the fault or negligence of the Lessor or the Lessee or anyone for whom the Lessor or the Lessee may be responsible, provided, however,

*Waiver of Subrogation*

3

that this release shall be applicable and in force and effect only with respect to loss or damage occurring during such time as the Lessor's or the Lessee's insurance policies contain a clause or endorsement to the effect that any such release shall not adversely affect or impair such insurance policies or prejudice the right of the Lessor and the Lessee to recover thereunder and further provided that such waiver is limited to the proceeds of such insurance policies. The Lessor and the Lessee shall each request their insurance carriers to include in each of their policies a suitable clause or endorsement, as aforesaid, provided that no extra cost is charged therefor, and upon request, the Lessor and the Lessee shall each advise the other whether or not it has been able to obtain such a clause or endorsement in its policies.

**Inspection of Books of Account**

5. The Lessor shall keep full and correct books of account at its principal office or at such other place as the Board may from time to time determine, and the same shall be open during all reasonable hours for inspection by the Lessee or a representative of the Lessee. The Lessor shall deliver to the Lessee within a reasonable time after the end of each fiscal year an annual report of corporate financial affairs, including a balance sheet and a statement of income and expenses, certified by an independent certified public accountant.

**Annual Report**

**Changes in Terms and Conditions of Proprietary Leases**

6. Each proprietary lease shall be in the form of this lease, unless a variation of any lease is authorized by lessees owning at least 75% of the Lessor's shares then issued and outstanding and executed by the Lessor and the Lessee. The form and provisions of all the proprietary leases then in effect and thereafter to be executed may be changed by the approval of lessees owning at least 75% of the Lessor's shares then issued and outstanding, and such changes shall be binding on all lessees even if they did not vote for such changes except that (i) the proportionate share of rent or cash requirements payable by any lessee may not be increased, (ii) the right of any lessee to cancel his lease under the conditions set forth in Paragraph 35 may not be eliminated or impaired without his express consent and (iii) provisions hereof are subject to the provisions of Subparagraph 38(c) of this lease. Approval by the lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose.

**Penthouses, Terraces and Balconies**

7. If the apartment includes a terrace, balcony, or portion of the roof adjoining a penthouse, the Lessee shall have and enjoy the exclusive use of the terrace or balcony or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this lease and to the use of the terrace, balcony or roof by the Lessor to the extent herein permitted. The Lessee's use thereof shall be subject to such regulations as may, from time to time, be prescribed by the Board. The Lessor shall have the right to erect equipment on the roof, including radio and television aerials and antennas, for its use and the use of the lessees in the Building and shall have the right of access thereto for such installations and for the repair thereof. The Lessee shall keep the terrace, balcony, or portion of the roof appurtenant to his apartment clean and free from snow, ice, leaves and other debris and shall maintain all screens and drain boxes in good condition. No planting, fences, structures or lattices shall be erected or installed on the terraces, balconies, or roof of the Building without the prior written approval of the Lessor. No cooking shall be permitted on any terraces, balconies or the roof of the Building, nor shall the walls thereof be painted by the Lessee without the prior written approval of the Lessor. Any planting or other structures erected by the Lessee or his predecessor in interest may be

4

removed by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the Building.

8. If at the date of the commencement of this lease any third party is in possession or has the right to possession of the apartment, then the Lessor hereby assigns to the Lessee all of the Lessor's rights against said third party from and after the date of the commencement of the term hereof, and the Lessee by the execution hereof assumes all of the Lessor's obligations to said third party from said date. The Lessor agrees to cooperate with the Lessee, but at the Lessee's expense, in the enforcement of the Lessee's rights against said third party.

**Assignment of Lessor's Rights Against Occupant**

9. If at the date of the commencement of this lease the Lessee has the right to possession of the apartment under any agreement or statutory tenancy, this lease shall supersede such agreement or statutory tenancy, which shall be of no further effect after the date of commencement of this lease, except for claims theretofore arising thereunder.

**Cancellation of Prior Agreements**

10. The Lessee, upon paying the rent and performing the covenants and complying with the conditions on the part of the Lessee to be performed as herein set forth, shall, at all times during the term hereby granted, quietly have, hold and enjoy the apartment without any let, suit, trouble or hindrance from the Lessor, subject, however, to the rights of present tenants or occupants of the apartment, and subject to any and all mortgages and underlying leases of the land and Building, as provided in Paragraph 22 below.

**Quiet Enjoyment**

11. The Lessee shall save the Lessor harmless from all liability, loss, damage and expense arising from injury to person or property occasioned by the failure of the Lessee to comply with any provision hereof, or due wholly or in part to any act, default or omission by the Lessee or of any person dwelling or visiting in the apartment, or by the Lessor, its agents, servants or contractors when acting as agent for the Lessee as this lease provides. This Paragraph shall not apply to any loss or damage when the Lessor is covered by insurance which provides for waiver of subrogation against the Lessee.

**Indemnity**

12. The Lessee shall pay the rent to the Lessor upon the terms and at the times herein provided, without any deduction on account of any set-off or claim which the Lessee may have against the Lessor, and if the Lessee fails to pay any installment of the rent promptly, the Lessee shall pay interest thereon at the maximum legal rate from the date when such installment became due to the date of payment thereof, and such interest shall be deemed additional rent hereunder.

**Payment of Rent**

13. The Lessor has adopted House Rules, appended hereto, and the Board may alter, amend or repeal such House Rules and adopt new House Rules. This lease shall be in all respects subject to such House Rules, which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof, and the Lessee hereby covenants to comply with all such House Rules and see that they are faithfully observed by the family, guests, employees and subtenants of the Lessee. Breach of the House Rules shall be a default under this lease. The Lessor shall not be responsible to the Lessee for the non-observance or violation of the House Rules by any other lessee or person but shall made a good faith effort to enforce same.

**House Rules**

5

Use of
Premises

14. The Lessee shall not, without the written consent of the Lessor on such conditions as the Lessor may prescribe, occupy or use the apartment or permit the same or any part thereof to be occupied or used for any purpose other than as a private dwelling for the Lessee and the Lessee's spouse, their children, grandchildren, parents, grandparents, brothers and sisters and domestic employees, and in no event shall more than one married couple occupy the apartment without the written consent of the Lessor. In addition to the foregoing, the apartment may be occupied from time to time by guests of the Lessee for a period of time not exceeding one month, unless a longer period of time is approved in writing by the Lessor, but no guests may occupy the apartment unless one or more of the permitted adult residents are then in occupancy or unless consented to in writing by the Lessor. Notwithstanding the foregoing, (a) the Lessee may use the apartment for any home occupation use permitted under applicable zoning laws, building codes or other rules and regulations of governmental authorities having jurisdiction and (b) a Lessee who is a holder of a block of Unsold Shares (defined in Paragraph 38 below) shall have the right to use the apartment as a model or an office (or both) in connection with the sale and rental of apartments to which the Unsold Shares are allocated. For purposes of this Paragraph 14, the term "Lessee" shall include a sublessee.

Subletting

15. Except as provided in Paragraphs 17(b) and 38 of this lease, the Lessee shall not sublet the whole or any part of the apartment or renew or extend any previously authorized sublease, unless consent thereto is duly authorized by a resolution of the Board or given in writing by a majority of the Board or, if the Board fails or refuses to give such consent, then by lessees owning at least two-thirds of the then issued and outstanding shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by written consent or affirmative vote taken at a meeting called for such purpose. No consent to a subletting shall operate to release the Lessee from any obligation hereunder.

Assignment

16. Except as provided in Paragraphs 17(b) and 38 of this lease,

(a) The Lessee shall not assign this lease or transfer the shares to which it is appurtenant or any interest therein, and no such assignment of transfer shall take effect as against the Lessor for any purpose, until

(i) An instrument of assignment in form approved by the Lessor executed and acknowledged by the assignor has been delivered to the Lessor.

(ii) An agreement executed and acknowledged by the assignee in form approved by the Lessor assuming and agreeing to be bound by all the covenants and conditions of this lease to be performed or complied with by the Lessee on and after the effective date of said assignment has been delivered to the Lessor, or, at the request of the Lessor, the assignee has surrendered the assigned lease and entered into a new lease in the same form for the remainder of the term, in which case the Lessee's lease shall be deemed cancelled as of the effective date of said assignment;

(iii) All shares of the Lessor to which this lease is appurtenant have been transferred to the assignee, with proper transfer taxes paid and stamps affixed;

(iv) All sums due from the Lessee have been paid to the Lessor, together with a sum to be fixed by the Board to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares;

(v) A search or certification from a title or abstract company as the Board may require has been delivered to the Lessor; and

(vi) Except in the case of an assignment, transfer or bequest of the shares and this lease to the Lessee's spouse or adult siblings or parents, and except as otherwise provided in Paragraphs 17(b) and 38 of this lease, consent to such assignment has been authorized by resolution of the Board, given in writing by a majority of the Board or, if the Board fails or refuses to give such consent within 30 days after submission of references to them or the Lessor's managing agent, then by lessees owning of record at least two-thirds of the then issued and outstanding shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose in the manner provided in the By-laws.

Notwithstanding any other provisions of this Lease or of the By-Laws of the Corporation, the Board of Directors may not refuse to give its consent to an assignment if the assignee meets the financial criteria established by the Board of Directors for new tenant-shareholders.

(b) If the Lessee dies while a party to this lease, consent shall not be unreasonably withheld to an assignment of the lease and shares to a financially responsible member of the Lessee's family (other than the Lessee's spouse, adult siblings or parents, as to whom no consent is required). **Consents On Death of Lessee**

(c) The Board or lessees may not withhold consent except for the failure of the proposed assignee to meet the financial requirements established by the Board of Directors. **Consents Generally: Stockholders' and Board's Obligations to Consent**

(d) If the lease is assigned in compliance herewith, the Lessee-assignor shall have no further liability on any of the covenants of this lease to be thereafter performed. **Release of Lessee Upon Assignment**

(e) Regardless of any prior consent theretofore given, neither the Lessee, his executor, any administrator, trustee or receiver of the property of the Lessee, nor anyone to whom the interest of the Lessee may pass by law shall be entitled to further assign this lease or to sublet the apartment or any part thereof, except upon compliance with the requirements of this lease. The restrictions on the assignment of this lease, as set forth above, are an especial consideration and inducement for the granting of this lease by the Lessor to the Lessee. No demand or acceptance of rent from any assignee hereof shall constitute or be deemed to constitute a consent to or approval of any assignment. **Further Assignment or Subletting**

(f) If this lease is then in force and effect, the Lessor shall, upon request of the Lessee, deliver to the assignee a written statement that this lease remains on the date thereof in force and effect, but no such statement shall be deemed an admission that there is no default under the lease. **Statement by Lessor**

7

**Pledge of Shares and Lease**

17. (a)    A pledge of this lease and the shares to which it is appurtenant shall not be a violation of this lease; but, except as otherwise provided elsewhere herein, neither the pledgee nor any transferee of the pledged security shall be entitled to have the shares transferred of record on the books of the Lessor, to vote such shares, to occupy or permit the occupancy by others of the apartment, or to sell such shares or this lease without complying with all of the provisions of Paragraphs 14, 15 and 16 of this lease, except clauses (a)(iv) and (vi) and Subparagraph (c) of Paragraph 16. The acceptance by the Lessor of payments by the pledgee or any transferee of the pledged security on account of rent or additional rent shall not constitute a waiver of the aforesaid provisions.

**Rights of a Secured Party**

(b)    Notwithstanding the provisions of Subparagraph (a) of this Paragraph 17 or any other provision of this lease to the contrary, the following provisions of this Paragraph shall govern and be binding:

(i)    The Lessor shall give to any holder of a security interest in the shares of the Lessor specified in the recitals of this lease or mortgagee of this lease who so requests (any such holder being referred to herein as a "Secured Party") a copy of any notice of default which the Lessor gives to the Lessee pursuant to the terms of this lease, and if the Lessee fails to cure the default specified in such notice within the time and in the manner provided for in this lease, the Secured Party shall have an additional period of time, equal to the time originally given to the Lessee, to cure said default for the account of the Lessee or to cause same to be cured. The Lessor shall not act upon said default unless and until the time in which the Secured Party may cure said default, or cause same to be cured as aforesaid, has elapsed, and the default has not been cured.

(ii)    If this lease is terminated by the Lessor as provided in Paragraphs 31 or 35 of this lease, or by agreement with the Lessee, (1) the Lessor shall promptly give notice of such termination to the Secured Party and (2) upon request of the Secured Party made within thirty (30) days of the giving of such notice the Lessor (i) shall commence and prosecute a summary dispossess proceeding to obtain possession of the apartment and (ii) shall, within sixty (60) days of its receipt of the aforesaid request by the Secured Party, reissue the aforementioned shares to and (with respect to any termination other than under Paragraph 36 below) enter into a new proprietary lease for the apartment with any individual designated by the Secured Party, or the individual nominee of the individual so designated by the Secured Party, all without the consent of the Board or the shareholders to which reference is made in clause 16(a)(vi) and Subparagraph 32(c) but with the consent only of the Lessor's then managing agent, which shall not be unreasonably withheld or delayed, provided, however, that the Lessor has received payment, on behalf of the Lessee, of all rent, additional rent and other sums owed by the Lessee to the Lessor under this lease for the period ending on the date of re-issuance of the aforementioned shares of the Lessor, including, without limitation, sums owed under Subparagraphs 32(a) and (c) of this lease. The individual designated by the Secured Party (if and so long as such individual (by himself or a member of his family) does not actually occupy the apartment) shall have all of the rights provided for in Paragraphs 15, 16, 21 and 38 of this lease as if he were a holder of Unsold Shares. Accordingly, no surplus shall be payable by the Lessor to the Lessee as otherwise provided in Subparagraph 32 (c).

8

(iii) If the Secured Party is a bank, savings bank or savings and loan association and a default or an event of default occurs under the terms of the security agreement-leasehold mortgage or either of them entered into between the Lessee and the Secured Party, and if (1) notice of said default or event of default is given to the Lessor, (2) the Secured Party, or the individual nominee designated by the Secured Party, becomes entitled to be the owner of the shares and the lessee under this lease pursuant to the terms of said security agreement-leasehold mortgage, or either of them, (3) not less than five days' written notice of an intended transfer of the shares and this lease has been given to the Lessor and the Lessee, (4) there has been paid, on behalf of the Lessee, all rent, additional rent and other sums owed by the Lessee to the Lessor under this lease for the period ending on the date of transfer of the aforementioned shares as hereinafter provided, and (5) the Lessor is furnished with such affidavits, certificates and opinions of counsel, in form and substance reasonably satisfactory to the Lessor, as it shall reasonably request indicating that the foregoing conditions (1) through (4) have been met, then (a) a transfer of the shares and the proprietary lease shall be made to such individual, upon request, and without the consent of the Board or the shareholders to which reference is made in clause 16(a)(vi) but with the consent only of the Lessor's then managing agent, which shall not be unreasonably withheld or delayed, and (b) the individual to whom such transfer is made (if and as long as such individual (by himself or a member of his family) does not actually occupy the apartment) shall have all of the rights provided for in Paragraphs 15, 16, 21 and 38 of this lease as if he were a holder of Unsold Shares.

(iv) Without the prior written consent of any Secured Party who has requested a copy of any notice of default as hereinbefore provided in clause (b)(i) of this Paragraph 17, (a) the Lessor and the Lessee shall not enter into any agreement modifying or cancelling this lease, (b) no change in the forms, terms or conditions of this lease, as permitted by Paragraph 6, shall eliminate or modify any rights, privileges or obligations of a Secured Party as set forth in this Paragraph 17, (c) the Lessor shall not terminate or accept a surrender of this lease, except as provided in Paragraphs 31 or 35 of this lease and in clause (b)(i) of this Paragraph 17, (d) the Lessee shall not assign this lease or sublet the apartment, (e) any modification, cancellation, surrender, termination or assignment of this lease or any sublease of the apartment not made in accordance with the provisions hereof shall be void and of no effect, (f) the Lessor shall not consent to any further mortgage on this lease or security interest created in the shares, (g) the Lessee shall not make any further mortgage or create any further security interest in the shares or this lease, and (h) any such further mortgage or security interest shall be void and of no effect.

(v) Any designee of a Secured Party to whom a transfer of a lease has been made pursuant to the terms of clauses (b)(ii) and (iii) may cancel this lease under the terms of Paragraph 35 hereof, except that such designee (a) may cancel this lease at any time after the designee acquires this lease and the shares appurtenant hereto due to foreclosure of the security agreement leasehold mortgage, (b) need give only thirty (30) days' notice of its intention to cancel and (c) may give such notice at any time during the calendar year.

(vi) A Secured Party claiming or exercising any of the rights and privileges granted pursuant to the provisions of this Subparagraph (b) shall be

9

deemed to have agreed to indemnify the Lessor for all loss, liability or expense (including reasonable attorneys' fees) arising out of claims by the Lessee, his successors or assigns against the Lessor or the Secured Party, or their respective successors or assigns, for acts or omissions to act on the part of either the Lessor or the Secured Party, or their respective successors or assigns, pursuant to this Subparagraph (b). The Lessor shall give the Secured Party written notice with reasonable promptness of any such claim against the Lessor, and the Secured Party may contest such claim in the name and on behalf of the Lessor with counsel selected by the Secured Party at the Secured Party's sole expense. The Lessor shall execute such papers and do such things as are reasonably necessary to implement the provisions of this clause (vi).

**Recognition Agreement**

(vii) Upon the Lessee's final payment under the loan given by the Secured Party or upon prepayment of said loan, the Secured Party shall give the Lessor notice of such final payment or prepayment (as the case may be).

(viii) Upon request of a holder of Unsold Shares (referred to in Paragraph 38 below), the Lessor shall enter into an agreement (commonly known as a "Recognition Agreement") with a Secured Party pursuant to which the Lessor shall acknowledge and agree that the foregoing provisions of this Subparagraph (b) shall enure to the benefit of, and apply to, such Secured Party. The Recognition Agreement may contain such additional or different provisions as the Secured Party may request, and the Lessor shall execute and deliver same to the Secured Party provided only that such additional or different provisions have been approved by counsel to the Lessor (which approval may not be unreasonably withheld or delayed and shall be given or deemed given if same are of substantially similar tenor to the provisions of this Subparagraph (b)). All costs and expenses incurred by the Lessor in connection with such Recognition Agreement (including legal fees) shall be borne entirely by the Lessor, and no charge therefor may be assessed to said holder of Unsold Shares, or his successors or assigns, including the party acquiring this lease and the appurtenant shares from a holder of Unsold Shares. The provisions of this clause (viii) shall not apply to a lessee who is not a holder of Unsold Shares.

(ix) Subject to the provisions of clause (viii) above, a Recognition Agreement between a Secured Party and the Lessor may contain such additional or different provisions as the Lessor and said Secured Party may agree to.

**Repairs by the Lessee**

18. (a) The Lessee shall take possession of the apartment and its appurtenances and fixtures "as is" as of the commencement of the term hereof. Subject to the provisions of Paragraph 4 above, the Lessee shall keep the interior of the apartment (including interior walls, floors and ceilings and both interior and exterior windows, window panes, window frames, sashes, sills, entrance and terrace doors, frames and saddles) in good repair, shall do all of the painting and decorating required for his apartment, including the interior of window frames, sashes and sills, terrace doors, frames and saddles, and shall be solely responsible for the maintenance, repair and replacement of plumbing, gas and heating fixtures and equipment and such refrigerators, dishwashers, removable and through-the-wall air conditioners, washing machines, ranges and other appliances as may be in the

10

apartment. As used herein "plumbing, gas and heating fixtures" shall include exposed gas, steam and water pipes attached to fixtures, appliances and equipment and the fixtures, appliances and equipment to which they are attached, and any special pipes or equipment which the Lessee may install within the wall or ceiling, or under the floor, but shall not include gas, steam, water or other pipes or conduits within the walls, ceiling or floors. The Lessee shall be solely responsible for the maintenance, repair and replacement of all lighting and electrical fixtures, appliances and equipment, and all meters, fuse boxes or circuit breakers and electrical wiring and conduits from the junction box at the riser into and through the Lessee's apartment. Any ventilator or air conditioning device which is visible from the outside of the Building shall at all times be painted by the Lessee in a standard color which the Lessor may select for the Building.

(b) The Lessee shall not permit unreasonable cooking or other odors to escape into the Building. The Lessee shall not permit or suffer any unreasonable noises or anything which interferes with the rights of other lessees or unreasonably annoys them or obstructs the public halls or stairways.

Odors and<br>Noises

(c) If, in the Lessor's sole judgment, any of the Lessee's equipment or appliances will cause damage to the Building or poor quality or interruption of service to other portions of the Building, or overloading of or damage to facilities maintained by the Lessor to supply water, gas, electricity or air conditioning to the Building, or if any such appliances visible from the outside of the Building become rusty or discolored, the Lessee shall promptly, on the notice from the Lessor, remedy the condition and, pending such remedy, cease using any appliance or equipment which may be creating the objectionable condition.

Equipment<br>and<br>Appliances

(d) The Lessee shall comply with all the requirements of the Board of Fire Underwriters, insurance authorities and all governmental authorities and with all laws, ordinances, rules and regulations with respect to the occupancy or use of the apartment. If any mortgage affecting the land or the Building shall contain any provisions pertaining to the right of the Lessee to make changes or alterations in the apartment, or to remove any of the fixtures, appliances, equipment or installations, the Lessee shall comply with the requirements of such mortgage or mortgages relating thereto. Upon the Lessee's written request, the Lessor shall furnish the Lessee with copies of applicable provisions of each and every such mortgage.

Rules and<br>Regulations<br>and Requirements<br>of Mortgage

19. If the Lessee fails for 30 days after notice to make repairs to any part of the apartment, its fixtures or equipment as herein required, or fails to remedy a condition which has become objectionable to the Lessor for reasons above set forth, or if the Lessee or any person dwelling in the apartment requests the Lessor, its agents or servants to perform any act not hereby required to be performed by the Lessor, the Lessor may make such repairs, or arrange for others to do the same, or remove such objectionable condition or equipment, or perform such act, without liability on the part of the Lessor; provided that, if the condition requires prompt action, notice of less than 30 days may be given, or, in case of emergency, no notice need be given. In all such cases the Lessor, its agents, servants and contractors shall, as between the Lessor and the Lessee, be conclusively deemed to be acting as agents of the Lessee, and all contracts therefor made by the Lessor shall be so construed

Lessor's Right<br>to Remedy<br>Lessee's<br>Defaults

whether or not made in the name of the Lessee. If the Lessee fails to perform or comply with any of the other covenants or provisions of this lease within the time required by a notice from the Lessor (not less than 5 days), then the Lessor may, but shall not be obligated to, comply therewith, and for such purpose may enter upon the apartment of the Lessee. The Lessor shall be entitled to recover from the Lessee all expenses incurred or for which it contracts hereunder, such expenses to be repayable by the Lessee on demand as additional rent.

**Increase in Rate of Fire Insurance**

20. The Lessee shall not permit or suffer anything to be done or kept in the apartment which would increase the rate of fire insurance on the Building or the contents thereof. If, by reason of the occupancy or use of the apartment by the Lessee, the rate of fire insurance on the Building or an apartment or the contents of either is increased, the Lessee shall (if such occupancy or use continues for more than 30 days after written notice from the Lessor specifying the objectionable occupancy or use) becomes liable for the additional insurance premiums incurred by the Lessor or any lessee or lessees of apartments in the Building on all policies so affected, and the Lessor shall have the right to collect the same for its benefit or the benefit of any such Lessees as additional rent for the apartment due on the first day of the calendar month following written demand therefor by the Lessor.

**Alterations**

21. (a) The Lessee shall not, without first obtaining the written consent of the Lessor, which consent shall not be unreasonably withheld or delayed, make in the apartment or Building, or on any roof, penthouse, terrace or balcony appurtenant thereto, any alteration, enclosure or addition or any alteration of or addition to the water, gas, or steam risers or pipes, heating or air conditioning system or units, electrical conduits, wiring or outlets, plumbing fixtures, intercommunication or alarm system, or any other installation or facility in the apartment or Building or, except as hereinafter authorized remove any additions, improvements or fixtures from the apartment. The performance by the Lessee of any work in the apartment shall be in accordance with any applicable rules and regulations of the Lessor and governmental agencies having jurisdiction thereof. The Lessee shall not in any case install any appliances which will overload the existing wires or equipment in the Building. Anything herein or in Subparagraph (b) below to the contrary notwithstanding, the consent of the Lessor shall not be required for any of the foregoing alterations, enclosures or additions made by, or the removal of any additions, improvements or fixtures from the apartment by, a holder of Unsold Shares, but the consent only of the Lessor's then managing agent shall be sufficient, which consent shall not be unreasonably withheld or delayed.

**Removal of Fixtures**

(b) Without the Lessor's written consent, the Lessee may not remove any fixtures, appliances, additions or improvements from the apartment except as hereinafter provided. If the Lessee, or a prior lessee, heretofore or hereafter has placed or places in the apartment, at the Lessee's own expense, any additions, improvements, appliances or fixtures, including but not limited to fireplace mantels, lighting fixtures, refrigerators, air conditioners, dishwashers, washing machines, ranges, woodwork, wall paneling, ceilings, special doors or decorations, special cabinet work, special stair railings or other built-in ornamental items, which can be removed without structural alterations or permanent damage to the apartment, then title thereto shall remain in the Lessee and the Lessee shall have the right, prior to the termination of the lease, to remove the same at the Lessee's own expense,

12

provided: (i) that the Lessee at the time of such removal is not in default in the payment of rent or in the performance or observance of any other covenants or conditions of this lease; (ii) that the Lessee, at his own expense, repairs all damage to the apartment which was caused by either the installation or removal of any of such additions, improvements, appliances or fixtures prior to the termination of this lease; (iii) that if the Lessee has removed from the apartment any articles or materials owned by the Lessor or its predecessor in title, or any fixtures or equipment necessary for the use of the apartment, the Lessee either restores such articles or materials and fixtures and equipment and repairs any damage resulting from their removal and restoration or replaces them with others of a kind and quality customary in comparable buildings and satisfactory to the Lessor; (iv) that if any mortgagee has acquired a lien on any such property prior to the execution of this lease, the Lessor first procures from such mortgagee its written consent to such removal, and any cost and expense incurred by the Lessor in respect thereof is paid by the Lessee; and (v) that prior to any such removal, the Lessee gives adequate written notice thereof to the Lessor.

(e) On the expiration or termination of this lease, the Lessee shall surrender to the Lessor possession of the apartment with all additions, improvements, appliances and fixtures then included therein, except as hereinabove provided. Any additions, improvements, fixtures, appliances not removed by the Lessee on or before such expiration or termination of this lease shall, at the option of the Lessor, be deemed abandoned and shall become the property of the Lessor and may be disposed of by the Lessor without liability or accountability to the Lessee. Any other personal property not removed by the Lessor at or prior to the termination of this lease may be removed by the Lessor to any place of storage and stored for the account of the Lessee without the Lessor in any way being liable for trespass, conversion or negligence by reason of any acts of the Lessor or of the Lessor's agents, or of any carrier employed in transporting such property to the place of storage, or by reason of the negligence of any person in caring for such property while in storage.

<span>*Surrender on Expiration of Term*</span>

22. This lease is and shall be subject and subordinate to all present and future ground or underlying leases and to any mortgages now or hereafter liens upon such leases or on the land and Building, or buildings, and the land upon which it (or they) stands and to any and all extensions, modifications, consolidations, renewals and replacements thereof, and to any assignment of rents now or hereafter made or given to the holder of any such mortgage as additional security. This clause shall be self-operative, and no further instrument of subordination shall be required by any such mortgage or ground or underlying lessor. In confirmation of such subordination the Lessee shall at any time, and from time to time, on demand, execute any instruments that may be required by any mortgagee, or by the Lessor, for the purpose of more formally subjecting this lease to the lien of any such mortgage or mortgages on the ground or underlying leases, and the Lessor being, of the Lessor and each of them is hereby irrevocably appointed the attorney-in-fact and agent of the Lessee to execute the same upon such demand, and the Lessee hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given.

<span>*Lease Subordinate to Mortgages and Ground Leases*</span>

If a ground or underlying lease is executed and delivered to the holder of a mortgage or mortgages on such ground or underlying lease or to a nominee or

designee of or a corporation formed by or for the benefit of such holder, the Lessee shall attorn to such mortgagee, the nominee or designee of such mortgagee or to any corporation formed by or for the benefit of such mortgagee.

**Mechanic's Lien**

23. If a notice of intention to file a mechanic's lien or a mechanic's lien claim against the Building is filed purporting to be for labor or material furnished or delivered at the Building or the apartment to or for the Lessee, or anyone claiming under the Lessee, the Lessee shall forthwith cause such lien to be discharged by payment, bonding or otherwise; and if the Lessee fails to do so within ten days after notice from the Lessor, the Lessor may cause such lien to be discharged by payment, bonding or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto; and shall have the right to collect, as additional rent, all amounts so paid and all costs and expenses paid or incurred in connection therewith, including reasonable attorneys' fees and disbursements together with interest thereon from the time of payment at the rate of 8% per annum.

**Cooperation**

24. The Lessee shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Lessor is incorporated.

**Right of Entry**

25. The Lessor, its agents and authorized workmen shall be permitted to visit, examine or enter the apartment and any storage space assigned to Lessee at any reasonable hour of the day upon notice, or at any time and without notice in case of emergency, to make or facilitate repairs in any part of the Building or to cure any default by the Lessee and to remove such portions of the walls, floors and ceilings of the apartment and storage space as may be required for any such purpose, but the Lessor shall thereafter restore the apartment and storage space to its proper and usual condition at the Lessor's expense if such repairs are the obligation of the Lessor, or at the Lessee's expense if such repairs are the obligation of the Lessee or were caused by the act or omission of the Lessee or any of the Lessee's family, guests, agents, employees or subtenants. In order that the Lessor may at all times have access to the apartment or storage rooms for the purposes provided for in this lease, **Key** the Lessee shall provide the Lessor with a key to each lock providing access to the apartment or the storage rooms, and if any lock is altered or a new lock installed, the Lessee shall provide the Lessor with a key thereto immediately upon installation. If the Lessee is not personally present to open and permit an entry at any time when an entry therein is necessary or permissible hereunder and has not furnished a key to the Lessor, the Lessor or the Lessor's agents (but, except in an emergency, only when specifically authorized by an officer of the Lessor or an officer of the managing agent) may forcibly enter the apartment or storage space without liability for damages by reason thereof (if during such entry the Lessor accords reasonable care to the Lessee's property) and without in any manner affecting the obligations and covenants of this lease. The right and authority hereby reserved do not impose, nor does the Lessor assume by reason thereof, any responsibility or liability for the care or supervision of the apartment or any of the pipes, fixtures, appliances or appurtenances therein contained, except as herein specifically provided.

**Waivers**

26. The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any provision of this lease, or to exercise any right or option herein contained, or to serve any notice, or to institute any action or proceeding shall not be construed as a waiver or a relinquishment for the future of any such provision, option or right, but such provision, option or right shall continue and

14

remain in full force and effect. The receipt of rent by the Lessor with knowledge of the breach of any covenant hereof shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless in writing expressly approved by the Board.

27. All notices by or demands from either party to the other shall be in writing and sent by registered mail, return receipt requested; if by the Lessee, addressed to the Lessor at the Building with a copy sent by regular mail to the Lessor's managing agent; if to the Lessee, addressed to the Building. Either party may by notice served in accordance herewith designate a different address for service of notices or demands. Notices or demands shall be deemed given on the date when mailed.

**Notices**

28. If the Lessee is at any time in default hereunder and the Lessor incurs any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending or asserting a counterclaim in any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent.

**Reimbursement of Lessor's Expenses**

29. (a) The Lessor shall not be liable, except by reason of the Lessor's negligence, for any failure or insufficiency of heat, air conditioning (where air conditioning is supplied or air conditioning equipment is maintained by the Lessor), water supply, electric current, gas, telephone or elevator service or other service to be supplied by the Lessor hereunder, or for interference with light, air, view or other interests of the Lessee. No abatement of rent or other compensation or claim of eviction shall be made or allowed because of the making or failure to make or delay in making any repairs, alterations or decorations to the Building, or any fixtures or appurtenances therein, or for space taken to comply with any law, ordinance or governmental regulation, or for interruption or curtailment of any service agreed to be furnished by the Lessor, due to accidents, alterations or repairs, or to difficulty or delay in securing supplies or labor or other cause beyond the Lessor's control, unless due to the Lessor's negligence.

**Lessor's Immunities**

(b) If the Lessor furnishes to the Lessee any storage bins or space, the use of the laundry, or any facility outside the apartment, including but not limited to a television antenna, the same shall be deemed to have been furnished gratuitously by the Lessor under a revocable license. The Lessee shall not use such storage space for the storage of valuable or perishable property, and the Lessee shall keep any such storage space assigned to him clean and free of combustibles. If washing machines or other equipment are made available to the Lessee, the Lessee shall use the same on the understanding that such machines or equipment may or may not be in good order and repair and that the Lessor is not responsible for any such equipment, nor for any damage caused to the property of the Lessee resulting from the Lessee's use thereof, and that any use that the Lessee shall make of such equipment shall be at his own cost, risk and expense.

**Storage Space and Laundry**

(c) The Lessor shall not be responsible for any damage to any automobile or other vehicle left in the care of any employee of the Lessor by the Lessee, and the Lessee shall hold the Lessor harmless from any liability arising out of any injury to

**Automobiles and Other Property**

15

person or property caused by or with such automobile or other vehicle while in the care of such employee. The Lessor shall not be responsible for any property left with or entrusted to any employee of the Lessor, or for the loss of or damage to any property within or without the apartment by theft or otherwise.

**Window Cleaning**

30. The Lessee shall not require, permit, suffer or allow the cleaning of any window in the premises from the outside unless the equipment and safety devices required by law, ordinance, rules and regulations, if any, are provided and used; and the Lessee shall indemnify the Lessor and its employees, other lessees, and the managing agent for all losses, damages or fines suffered by them as a result of the Lessee's requiring, permitting, suffering or allowing any window in the premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules, if any.

**Termination of Lease by Lessor**

31. If, upon, or at any time after, the happening of any of the events mentioned in clauses (a) to (i) inclusive of this Paragraph 31, the Lessor gives the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on a date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term; all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire; the Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation: thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, by any suitable action or proceeding at law or in equity, by force or otherwise, and to repossess the apartment in its former state as if this lease had not been made; and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, re-possession and removal herein granted and reserved:

**Lessee Ceasing To Own Accompanying Shares**

(a) If the Lessee ceases to be the owner of the shares to which this lease is appurtenant, or if this lease passes or is assigned to anyone who is not then the owner of all said shares;

**Lessee Becoming a Bankrupt; Appointment of Receiver; Assignment for Creditors; Levy on Shares; Transfer by Operation of Law; Transfer Pursuant to Pledge, Mortgage or Security Agreement**

(b) If at any time during the term of this lease (i) the Lessee is adjudicated a bankrupt under the laws of the United States; (ii) a receiver of all the property of the Lessee or of this lease is appointed under any provision of the laws of the State of New Jersey, or under any statute of the United States and the order appointing such receiver is not vacated within thirty days; (iii) the Lessee makes a general assignment for the benefit of creditors; (iv) any of the shares owned by the Lessee to which this Lease is appurtenant are duly levied upon under the process of any court whatever unless such levy is discharged within thirty days; (v) this lease or any of the shares to which it is appurtenant pass by operation of law or otherwise to anyone other than the Lessee named herein or a person to whom such Lessee has assigned this lease in the manner herein permitted, but this subsection (v) shall not be applicable if this lease devolves upon the executors or administrators of the Lessee and provided that within eight (8) months (which period may be extended by the Board) after the death said lease and shares are transferred to any assignee in accordance with Paragraph 16 hereof; or (vi) this lease or any of the shares to which it is appurtenant pass to anyone other than the Lessee herein named by reason of a default by the Lessee under a pledge or security agreement or a leasehold mortgage made by the Lessee;

16

(c) Subject to the provisions of Paragraphs 17(b) and 38 hereof, if this lease is assigned, or any sublease is entered into hereunder, without full compliance with the requirements of Paragraphs 15 and 16 hereof; or if any person not authorized by Paragraph 14 is permitted to use or occupy the apartment and the Lessee fails to cause such unauthorized person to vacate the apartment within ten days after written notice from the Lessor;

Assignment, Subletting or Unauthorized Occupancy

(d) If the Lessee has been in default for a period of one month in the payment of any rent or additional rent or of any installment thereof and fails to cure such default within ten days after written notice from the Lessor;

Default in Rent

(e) If the Lessee is in default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default continues for thirty days after written notice from the Lessor, provided, however, that if said default consists of the failure to perform any act the performance of which requires any substantial period of time, then if within said period of thirty days such performance is commenced and thereafter diligently prosecuted to conclusion without delay and interruption, the Lessee shall be deemed to have cured said default;

Default in Other Covenants

(f) If at any time the Lessor determines, upon the affirmative vote of two-thirds of its then Board of Directors at a meeting duly called for that purpose, that because of objectionable conduct on the part of the Lessee or of a person dwelling or visiting in the apartment, repeated after written notice from the Lessor, the tenancy of the Lessee is undesirable (it being understood, without limiting the generality of the foregoing, that to repeatedly violate or disregard the House Rules attached hereto or hereafter in accordance with the provisions of this lease, or to permit or tolerate a person of dissolute, loose or immoral character to enter or remain in the Building or the apartment, shall be deemed to be objectionable conduct);

Lessee's Objectionable Conduct

(g) If at any time the Lessor determines, upon the affirmative vote of two-thirds of its then Board of Directors at a meeting duly called for that purpose, and the affirmative vote of the record holders of at least two-thirds of its then issued and outstanding shares at a shareholders' meeting duly called for that purpose, to terminate all proprietary leases;

Termination of All Proprietary Leases

(h) If the Building is destroyed or damaged and the shareholders decide not to repair or rebuild as provided in Paragraph 4;

Destruction of Building

(i) If at any time the Building or a substantial portion thereof is taken by condemnation proceedings;

Condemnation

32. (a) If the Lessor resumes possession of the apartment, either by summary proceedings, action of ejectment or otherwise, because of default by the Lessee in the payment of any rent or additional rent due hereunder, or in the expiration of the term pursuant to a notice given as provided in Paragraph 31 hereof upon the happening of any event specified in clauses (a) to (f) inclusive of Paragraph 31, the Lessee shall remain liable for payment of a sum equal to the rent which would be due hereunder and shall pay the same in installments at the time such rent would be due. No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment. After

Lessor's Rights After Lessee's Default

17

resuming possession, the Lessor may, at its option, from time to time (i) relet the apartment for its own account or (ii) relet the apartment as the agent of the Lessee, in the name of the Lessee or in its own name, for a term or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions in its discretion. Any reletting of the apartment shall be deemed for the account of the Lessee, unless within ten days after such reletting the Lessor notifies the Lessee that the premises have been relet for the Lessor's own account. Any reletting of the apartment by the Lessor as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the apartment for its own account. If the Lessor relets the apartment as agent for the Lessee, it shall, after reimbursing itself for its expenses in connection therewith, including leasing commissions, a reasonable amount for attorneys' fees and expenses, and decorations, alterations and repairs in and to the apartment, apply the remaining avails of such reletting against the Lessee's continuing obligations hereunder. A final accounting shall occur between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expiration of the term of this lease as stated on page 1 hereof; (B) the date as of which a new proprietary lease covering the apartment becomes effective; (C) the date the Lessor gives written notice to the Lessee that it has relet the apartment for its own account; (D) the date upon which all proprietary leases of the Lessor terminate. From and after the date upon which the Lessor becomes obligated to account finally to the Lessee, as above provided, the Lessor shall have no further duty to account to the Lessee for any avails of reletting and the Lessee shall have no further liability for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.

**Collection of Rent from Subtenants**

(b) If the Lessee at any time sublets the apartment and defaults in the payment of any rent or additional rent, the Lessor may, at its option, so long as such default continues, demand and receive from the subtenant the rent due or becoming due from such subtenant to the Lessee and apply the amount to pay sums due and to become due from the Lessee to the Lessor. Any payment by a subtenant to the Lessor shall constitute a discharge of the obligation of such subtenant to the Lessee to the extent of the amount so paid. The acceptance of rent from any subtenant shall not be deemed a consent to or approval of any subletting or assignment by the Lessee or a release or discharge of any of the obligations of the Lessee hereunder.

**Sale of Shares**

(c) Upon the termination of this lease under the provisions of clauses (a) to (f) inclusive of Paragraph 31, the Lessee shall surrender to the corporation the certificate for the shares of the corporation owned by the Lessee to which this lease is appurtenant. Whether or not said certificate has been surrendered, the Lessor may issue a new proprietary lease for the apartment and issue a new certificate for the shares of the Lessor owned by the Lessee and allocated to the apartment when a purchaser therefor is obtained, provided that the issuance of such shares and such lease to such purchaser has been authorized by a resolution of the Board, or by a writing signed by a majority of the Board or by lessees owning, of record, at least a majority of the shares of the Lessor accompanying Proprietary Leases then in force. Upon such issuance the certificate owned or held by the Lessee shall be automatically cancelled and rendered null and void. The Lessor shall apply the proceeds received for the issuance of such shares towards the payment of the Lessee's indebtedness hereunder (including interest, attorneys' fees and other expenses incurred by the Lessor) and, if the proceeds are sufficient to pay the same,

18

the Lessor shall pay over any surplus to the Lessee, but, if insufficient, the Lessee shall remain liable for rent and expenses accrued to that time. The Lessor shall not, however, be obligated to sell such shares and the appurtenant lease or otherwise make any attempt to mitigate damages.

33.  The Lessee hereby expressly waives any and all right of redemption in case the Lessee is dispossessed by judgment or warrant of any court or judge. The words "enter", "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meanings.

*Waiver of Right of Redemption*

34.  Upon the termination of this lease under the provisions of clauses (a) to (f) inclusive of Paragraph 31, the Lessee shall remain liable as provided in Paragraph 32 of this lease. Upon the termination of this lease under any of its provisions, the Lessee shall be and remain liable to pay all rent, additional rent and other charges due or accrued and to perform all covenants and agreements of the Lessee up to the date of such termination. On or before any such termination the Lessee shall vacate the apartment and surrender possession thereof to the Lessor or its assigns, and, upon demand of the Lessor or its assigns, shall execute, acknowledge and deliver to the Lessor or its assigns any instrument which may reasonably be required to evidence the surrendering of all estate and interest of the Lessee in the apartment or the Building.

*Surrender of Possession*

35.  (a)  This lease may be cancelled by the Lessee on any October 31st after the third anniversary of the consummation of the Plan of Cooperative Organization pursuant to which proprietary leases were originally issued, upon complying with all the provisions hereinafter set forth. Irrevocable written notice of intention to cancel must be given by the Lessee to the Lessor on or before May 1 in the calendar year in which such cancellation is to occur. At the time of giving of such notice of intention to cancel there must be deposited with the Lessor by the Lessee:

*Lessee's Option to Cancel*

(i)  the Lessee's counterpart of this lease with a written assignment in form required by the Lessor, in blank, effective as of October 31 of the year of cancellation, free from all subleases, tenancies, liens, encumbrances, security interests and any other charges whatsoever;

*Deposits Required*

(ii)  the Lessee's certificate for his shares of the Lessor, endorsed in blank for transfer and with all necessary transfer tax stamps affixed and with payment of any transfer taxes due thereon; and

(iii)  a written statement setting forth in detail those additions, improvements, fixtures or equipment which the Lessee has, under the terms of this lease, the right to and intends to remove.

(b)  All additions, improvements, appliances and fixtures which are removable under the terms of this lease and which are enumerated in the statement made as provided in clause (iii) above shall be removed by the Lessee prior to October 31st of the year of cancellation, and on or before said October 31st the Lessee shall deliver possession of the apartment to the Lessor in good condition with all required equipment, fixtures and appliances installed and in proper operating condition with all required equipment, fixtures and appliances installed and in proper operating

*Removal of Fixtures*

*Possession*

19

condition and free from all subleases and tenancies, liens, encumbrances and other charges and pay to the Lessor all rent, additional rent and other charges which are payable under this lease up to and including the following October 31st.

**Permission to Show and Occupy Premises**

(c) The Lessor and its agents may show the apartment to prospective lessees, contractors and architects at reasonable times after notice of the Lessee's intention to cancel. After October 31st or the earlier vacating of the apartment, the Lessor and its agents, employees and lessees may enter the apartment, occupy the same and make such alterations and additions therein as the Lessor may deem necessary or desirable without diminution or abatement of the rent due hereunder.

**Effective Date of Cancellation**

(d) If the Lessee is not otherwise in default hereunder and if the Lessee complies in timely fashion with all of the provisions of Subparagraphs (a), (b) and (c) hereof, this lease shall be cancelled and all rights, duties and obligations of the parties hereunder shall cease as of the October 31st fixed in said notice, and the shares of the Lessor shall become the absolute property of the Lessor, provided, however, that the Lessee shall not be released from any indebtedness owing to the Lessor on said last mentioned date.

**Rights on Lessee's Default**

(e) If the Lessee gives the notice but fails to comply with any of the other provisions of this Paragraph, the Lessor shall have the option at any time prior to October 31st (i) of returning to the Lessee this lease, the certificate for shares and other documents deposited, and thereupon the Lessee shall be deemed to have withdrawn the notice of intention to cancel this lease, or (ii) of treating this lease as cancelled as of the October 31st named as the date for the cancellation of such lease in the notice of intention to cancel, and bringing such proceedings and actions as it may deem best to enforce the covenants of the Lessee hereinabove contained and to collect from the Lessee the payments which the Lessee is required to make hereunder, together with reasonable attorneys' fees and expenses.

**Extension of Option to Cancel**

36. (a) If on May 1st in any year the total number of shares owned by lessees holding proprietary leases who have given notice pursuant to Paragraph 35 of intention to cancel such proprietary leases on October 31st of said year aggregate ten percent (10%) or more of the Lessor's outstanding shares, exclusive of treasury shares, then the Lessor shall, prior to May 30th in such year, give a written notice to the holders of all issued shares of the Lessor, stating the total number of shares then outstanding and in its treasury and the total number of shares owned by lessees holding proprietary leases who have given notice of intention to cancel. In such case the proprietary lessees to whom such notice has been given shall have the right to cancel their leases in compliance with the provisions of Paragraph 35 hereof, provided only that written notice of their intention to cancel such leases is given on or before August 1st instead of May 1st.

**Right of Lessees to Cancel**

(b) If lessees owning at least 80% of the then issued and outstanding shares of the Lessor exercise the option to cancel their leases in one year, this and all other proprietary leases shall thereupon terminate on the October 31st of the year in which such options are exercised, as though every lessee had exercised such option. In such event none of the lessees shall be required to surrender his shares to the Lessor, and all certificates for shares delivered to the Lessor by those who during that year served notice of intention to cancel their leases under the provisions hereof shall be returned to such lessees.

20

37. No later than thirty days after the termination of all proprietary leases, whether by expiration of their terms or otherwise, a special meeting of shareholders of the Lessor shall take place to determine whether (a) to continue to operate the Building as a residential apartment building, (b) to alter, demolish or rebuild the Building or any part thereof or (c) to sell the Building and liquidate the assets of the Lessor. The Board shall carry out the determination made at said meeting of shareholders of the Lessor, and all of the holders of the then issued and outstanding shares of the Lessor shall have such rights as inure to shareholders of corporations having title to real estate.

*Continuance of Cooperative Management of Building After All Leases Terminated*

38. (a) The term "Unsold Shares" means and has exclusive reference to the shares of the Lessor which were issued to the Sponsor or individuals designated by the Sponsor pursuant to the Plan of Cooperative Organization or Contract of Sale under which the Lessor acquired the title to the Building; and all shares which are Unsold Shares shall retain their character as such (regardless of transfer) until an individual purchases same and actually occupies (by himself or a member of his family) the apartment to which such shares are allocated.

*Unsold Shares*

(b) Neither the subletting of an apartment nor the assignment of this lease by a holder of Unsold Shares allocated to such apartment shall require the consent of the Board or shareholders, as provided in Paragraphs 15 and 16, but consent only of the Lessor's then managing agent, provided the same shall not be unreasonably withheld, shall be sufficient for approval and the taking effect of such subletting or assignment and of the transfer of such shares in the case of an assignment. At such holder's option, in lieu of obtaining such consent of the managing agent, the consent of the Directors shall suffice, and such consent of the Board of Directors shall not be unreasonably withheld (see clause 16(a)(vi) above in this regard). A holder of Unsold Shares shall not be required to pay any sums for expenses of the Lessor and its managing agent as set forth in clause 16(a)(iv) or to furnish a search or certificate as set forth in clause 16(a)(v).

*Subletting Apartment and Sale of Shares*

(c) Without the Lessee's consent, no change in the form, terms or conditions of this proprietary lease, as permitted by Paragraph 6, shall (1) affect the rights of a Lessee who is a holder of the Unsold Shares accompanying this lease to sublet the apartment or to assign this lease, as provided in this paragraph, or (2) eliminate or detrimentally modify any rights, privileges or obligations of a Lessee who is a holder of Unsold Shares.

*Change in Form of Lease*

(d) A holder of Unsold Shares shall not be entitled to cancel this lease pursuant to Paragraph 35 (although this provision shall not apply in the event of a sale of the Unsold Shares to a party who is not another holder of Unsold Shares together with an assignment of his interest hereunder). Notwithstanding the foregoing, a holder of Unsold Shares shall be entitled to cancel this lease if (i) the owners of a majority of the Corporation's outstanding shares (other than Unsold Shares) elect to cancel their leases or (ii) the Unsold Shares constitute 15% or less of the Corporation's outstanding shares, at least five years have elapsed since the Closing Date and on the effective date of cancellation the holders of Unsold Shares pay to the Corporation a sum equal to the then current monthly maintenance charge for the apartment(s) being surrendered multiplied by 24.

*Limited Right of Cancellation*

(e) So long as the Sponsor or holders of Unsold Shares continue to own the shares and proprietary leases allocated to at least 15 percent of the apartments of the

21

premises, Pembroke Apartments, then the Board shall not, without the con-
sent of the Sponsor, unless required by law or the order of a governmental
agency:  (i) increase or reduce the number of employees contemplated by a
Plan for Cooperative Ownership of the Pembroke Apartments (the "Plan.")
except as required by law; (ii) increase the amount of total mortgage
indebtedness of the Corporation or refinance, consolidate or otherwise
alter the terms of the mortgages described in the Plan, or enter into any
new mortgage other than as set forth in the Plan (except upon maturity of
such mortgages); (iii) increase the amounts of any reserves for contingen-
cies or replacements as contemplated in the Plan; (iv) enter into a con-
tract of sale or lease of the premises Pembroke Apartments; (v) levy an
assessment on the shares.


A proprietary lessee who is the Sponsor or a holder of Unsold
Shares agrees not to vote his shares either alone or in combination
with other holders of Unsold Shares so as to elect to the Board of
Directors a greater number of directors than is equal to a fraction,
the numerator of which is the number of Unsold Shares and the
denominator of which is the number of shares outstanding of the
Apartment Corporation.


**Foreclosure— Receiver of Rents**  39. Notwithstanding anything contained in this lease, if any action is instituted
to foreclose any mortgage on the land or the Building or the leasehold of the land or
Building, the Lessee shall, on demand, pay to the receiver of rents appointed in such
action rent, if any, owing hereunder on the date of such appointment and shall pay
thereafter to such receiver in advance, on the first day of each month during the
pendency of such action, as rent hereunder, the rent for the apartment as last
determined and established by the Board prior to the commencement of said action,
and such rent shall be paid during the period of such receivership whether or not the
Board determines and establishes the rent payable hereunder for any part of the
period during which such receivership may continue. The provisions of this
Paragraph are intended for the benefit of present and future mortgagees of the land
or the Building or the leasehold of the land or Building and may not be modified or
annulled without the prior written consent of any such mortgage holder.

**To Whom Covenants Apply**  40. The references herein to the Lessor shall be deemed to include its successors
and assigns, and the references herein to the Lessee or to a shareholder of the Lessor
shall be deemed to include the executors, administrators, legal representatives,
legatees, distributees and assigns of the Lessee or of such shareholder; and the
covenants herein contained shall apply to, bind and inure to the benefit of the Lessor

22

and its successors and assigns, and the Lessee and the executors and administrators, legal representatives, legatees, distributees and assigns of the Lessee, except as hereinabove stated. .

41. To the extent permitted by law, the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the Lessee's use or occupancy of the apartment, or any claim of damage resulting from any act or omission of the parties in any way connected with this lease or the apartment. **Waiver of Trial by Jury**

42. In the event of a breach or threatened breach by the Lessee of any provision hereof, the Lessor shall have the right of injunction and the right to invoke any remedy at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for, and the election of one or more remedies shall not preclude the Lessor from any other remedy. **Lessor's Additional Remedies**

43. If more than one person is named as the Lessee hereunder, the Lessor may require the signatures of all such persons in connection with any notice to be given or action to be taken by the Lessee hereunder, including, without limiting the generality of the foregoing, the surrender or assignment of this lease or any request for consent to assignment or subletting. Each person named as Lessee shall be jointly and severally liable for all of the Lessee's obligations hereunder. Any notice by the Lessor to any person named as Lessee shall be sufficient, and shall have the same force and effect, as though given to all persons named as Lessee. **Lessee More Than One Person**

44. If any clause or provision herein contained is adjudged invalid, the same shall not affect the validity of any other clause or provision of this lease or give rise to any cause of action in favor of either party as against the other. **Effect of Partial Invalidity**

45. The Lessee may not institute an action or proceeding against the Lessor or defend or make a counterclaim in any action by the Lessor related to the Lessee's failure to pay rent if such action, defense or counterclaim is based upon the Lessor's failure to comply with its obligations under this lease or any law, ordinance or governmental regulation unless such failure continues for thirty days after the giving of written notice thereof by the Lessee to the Lessor. **Notice to Lessor of Default**

46. The shares of the Lessor held by the Lessee and allocated to the apartment have been acquired and are owned subject to the following conditions agreed upon with the Lessor and with each of the other proprietary lessees for their mutual benefit: **Unity of Shares and Lease**

(a) the shares represented by each certificate are transferable only as an entirety and only in connection with a simultaneous transfer of this lease, unless transferred pursuant to Article VI, Section 4 of the By-laws of the Lessor in connection with the regrouping of space in one or more apartments; and

(b) the shares shall not be sold or transferred except to the Lessor or to an assignee of this lease after compliance with all of the provisions of Paragraph 16 of this lease relating to assignments.

23

Charges for
Gas and
Electricity

47. If at any time or times during the term of this lease the consumption of gas or electricity . or both. in the apartment is measured by a meter which also measures consumption outside the apartment, the Lessor may determine from time to time by resolution of the Board of Directors the charges, if any. to be paid by the Lessee on account of such consumption of gas or electricity, or both, and any such charges shall be payable monthly in advance, in such payments or installments and at such times as may be required by the Board of Directors. Such charges may be determined by the proportion that the number of shares of the Lessor allocated to the apartment bears to all shares of the Lessor then issued and outstanding, by the approximate proportion that the floor area of the apartment bears to the entire floor area measured by such meter, or by such other equitable method as may be determined by the Board of Directors.

No
Discrimination

48. When exercising any right reserved to it in this lease, the Lessor shall not discriminate against any person because of race, creed, religion, color, national origin, sex or any other ground proscribed by law.

Marginal
Headings

49. The marginal headings of the several paragraphs of this lease shall not be deemed a part of this lease, nor used as evidence of the intent of the Parties.

Changes to be
in Writing

50. The provisions of this lease cannot be changed orally.

Non-Interference
with Marketing
Unsold Shares

51. Anything contained in this lease and the House Rules annexed hereto to the contrary notwithstanding, the Lessor shall neither prevent nor unreasonably impede or interfere with the sale of any block of Unsold Shares or the subletting of an apartment to which a block of Unsold Shares is allocated. A holder of Unsold Shares shall have the right to display "For Sale" and "For Rent" signs and similar promotional signs and material on or about the exterior of the Building, the lobby and apartments leased by him. In addition, prospective purchasers of Unsold Shares shall be given access to the public areas of the Building, elevators and hallways for purposes of ingress and egress, without being subject to any charge or fee therefor.

52. If any provision of this lease or the application thereof in any circumstance is held to be invalid, such invalidity shall not affect other provisions or applications of this lease, and to this extent the provisions of this lease are severable.

IN WITNESS WHEREOF, the parties have executed this lease.

2077 TENANTS CORP.

Lessor

ATTEST:

_____ By _____

(Vice) President
Secretary

WITNESS:

_____ _____ (L.S.)

_____ _____ (L.S.)

24

RECOGNITION AGREEMENT

[This form is not intended for use where the Proprietary Lease already has
"financing provisions" which duplicate the substance of this agreement or are at
substantial variance with the provisions of this agreement.]

Premises:    2077 Center Avenue, Unit 20-H
Fort Lee, NJ 07024

Gentlemen:

We have been asked by ▓▓▓▓▓▓▓▓▓▓▓ "Lessee") for a loan of  to be secured by a pledge, security
interest, mortgage and/or assignment (hereinafter sometimes collectively referred to as "the Security") of
shares of your Corporation allocated to the above Apartment and of the Proprietary Lease (the "Lease")
appurtenant thereto (the shares and Lease collectively referred to as "the Apartment").

1. (a) You are a New Jersey corporation formed for the purpose of cooperative ownership and
owner in fee of the above premises.

(b) Your records show that the Lessee is the owner of the Apartment.

(c) You have duly approved or consented to the creation by the Lessee of the Security, if and to
the extent such approval is required by the Lease.

2. (a) You will not consent to any further encumbrances, subletting, termination, cancellation,
surrender or modification of the Apartment by the Lessee without our approval, which we will not
unreasonably withhold but this provision shall not apply to any modification or termination which, by the
terms of the Lease, may be effective against a Lessee when approved by a fixed percentage of other
holders of your shares, or which may be effective in the event of condemnation or casualty.

(b) The Lessee has agreed that, without our written approval, the Lessee will not exercise any
right that he may have under the Lease to terminate the Lease so long as the loan is outstanding.
Accordingly you will not consider any attempt to do so effective.

(c) You will notify us of any notice of intention to terminate the Lease, and

(1) If the Lessee's default can be cured by the payment of money, you will also notify us
promptly of any default involving an amount equal to or exceeding three months
maintenance payments and will take no action to terminate the Lease or cancel the shares
if the default be cured either by us for the account of the Lessee or by the Lessee within
15 days after such notice of default or intention to terminate; or

(2) If the default cannot be so cured, you will institute no action to terminate the Lease or
cancel the shares until we have had reasonable notice and opportunity, by action or
otherwise, to induce the Lessee to cure the default, such opportunity to be no less than the
time provided in the Lease for the Lessee to cure.

(3) If you shall terminate the Lease and cancel the shares for a default not curable by the
payment of money, then, provided we pay you the amounts which are due to you under
the Lease (including its deficiency clause) when due, you shall not sell or sublet the
Apartment without our approval, unless the net proceeds of such sale or subletting shall
equal or exceed the amount owing to us by Lessee.

(d) You will accept payment from us on behalf of Lessee of any sums due under the Lease
(including its deficiency clause), any payments made by us under the terms of this agreement will be

© Copyright 1973 by AZTECH DOCUMENT SYSTEMS, INC.
Approved by THE COOPERATIVE HOUSING LAWYERS GROUP

deemed so paid, and no payments made in accordance herewith shall be deemed to limit our rights against the Lessee pursuant to law.

(e) You shall recognize our right as lienor against the Apartment pursuant to the Security, and, if the Lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the Apartment, after reimbursement to you of all sums due you under the Lease.

3.   (a) Before delivery of this letter by you to us, we will have authority from the Lessee to give, and will, on request, give you a copy of the financial and credit information provided by him, but shall be under no duty to advise you of the results of any credit check we may make.

(b) Notwithstanding any apparent authority granted to us under agreements with the Lessee, WE SHALL HAVE NO RIGHT OR POWER TO TRANSFER THE APARTMENT UPON FORECLOSURE OR OTHERWISE EITHER TO US OR ANYONE ELSE WITHOUT YOUR APPROVAL AS REQUIRED BY THE LEASE, provided, however, that nothing contained herein shall limit any rights we may have to dispossess the Lessee pursuant to law or realize upon our security in accordance herewith.

(c) If through oversight or negligence you or your agents or employees shall fail to notify us of Lessee's default prior to termination of the Lease, we will not seek to hold you or your agents or employees liable for breach of this agreement, provided that:

1) you advise us promptly after discovering your failure, and
2) if you have already sold or contracted to sell the Apartment, that you pay us the net proceeds of such sale (after reimbursing yourselves for all sums due you), or such lesser sum as shall equal the amount owing to us by the Lessee (the balance being payable to the Lessee), or
3) if you have not contracted to sell the Apartment, that the provisions of paragraphs "2(c)(3)" and "2(e)" hereof shall apply.

(d) We will indemnify you and your agent against loss, liability or expense incurred in connection with any claim by the Lessee, his successors or assigns against either of you arising out of our representations pursuant hereto or your agreements herein (except as stated in paragraph "3.(a)" hereof), provided you give us prompt notice of any such claim. We may contest such claim in your name and on your behalf, but at our sole cost and expense, and you will execute such documents and do such things as are reasonably necessary to assist us in such contest.

4.   While we have the right but no obligation to cure the Lessee's defaults under the Lease, if we do not do so within the time provided for herein, you shall have no obligation to us, except that in the event of sale or subletting the Apartment, you shall recognize our rights as lienor against the net proceeds of any sale or subletting (after reimbursement to you of all sums which are due to you under the Lease).

Any notice or approval provided for herein shall be deemed valid only if in writing and sent by registered or certified mail, as follows: to you, in care of your Managing Agent, with a copy by regular mail addressed to **2077 Tenants Corp.**, c/o **Wilkin Management, 45 Whitney Rd # A, Mahwah, NJ  07430** to us at ███████████████████████████████████

Either of us may change the address to which notices or approval shall be mailed by notice given as herein provided. This letter and the representations and agreements contained herein shall be deemed made as of the date of the making of the loan.

© Copyright 1973 by AZTECH DOCUMENT SYSTEMS, INC.
Approved by THE COOPERATIVE HOUSING LAWYERS GROUP

**AGREED TO:**
**2077 Tenants Corp., Lessor**

BY:_____

_____ *Print Name*

_____ *Title*

**Bank of America, N.A.**

BY:_____

_____ *Print Name*

_____ *Title*

**APPROVED:**

_____ *Lessee*

© Copyright 1973 by AZTECH DOCUMENT SYSTEMS, INC.
Approved by THE COOPERATIVE HOUSING LAWYERS GROUP

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

Kates Nussman Rapone
Ellis & Farhi, LLP
190 Moore Street, Suite 306
Hackensack, New Jersey 07601
(201)-488-7211
Attorneys for Unsecured Creditor 2077 Tenants
Corp.

In re:

BARRY LEVINE and MARILYN LEVINE,

                                        Debtors.

Case No.: 13-36917- DHS

Chapter:        13

Hearing Date: November 6, 2014

Judge: Donald H. Steckroth

## CERTIFICATION OF SERVICE

1. I, Matthew Z. Earle, Esq., represent Unsecured Creditor, 2077 Tenants Corp., in the above captioned matter.

2. On October 6, 2014, I sent a copy of the following pleadings and/or documents to the parties listed below:

   Objection to Motion

3. I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated

Dated: October 6, 2014

                                    /s/ Matthew Z. Earle
                                    Matthew Z. Earle, Esq.

| Name and Address of Party Served | Relationship of Party to Case | Mode of Service |
| --- | --- | --- |
| United States Trustee United States Trustee's Office United States Department of Justice, DNJ One Newark Center, Suite 2100 Newark, NJ 07102 | | Via Notice of Electronic Filing |
| Marie-Ann Greenberg, Esq. Chapter 13 Trustee 30 Two Bridges Road, Suite 230 Fairfield, NJ 07004 | Chapter 13 Trustee | Via Notice of Electronic Filing |
| John W. Sywilok, Esq. 51 Main Street Hackensack, NJ 07601 | Debtor's Attorney | Via regular mail and Notice of Electronic Filing |
| Andrew Spivack, Esq. Phelan Hallinan & Diamond, PC 400 Fellowship Road, Suite 100 Mt. Laurel, NJ 08054 | Attorney for Secured Creditor JPMorgan Chase Bank | Via regular mail and Notice of Electronic Filing |
| BARRY LEVINE 2077 CENTER STREET, APARTMENT 18F, FORT LEE, NJ 07024-4904 | Debtor | Via Regular Mail |
| MARILYN LEVINE 2077 CENTER STREET, APARTMENT 18F, FORT LEE, NJ 07024-4904 | Debtor | Via Regular Mail |